IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIM DAVIS, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Civil Action No. 21-166 |
| v. | ) Judge Nora Barry Fischer |
| | ) |
| | ) |
| PORTFOLIO RECOVERY ASSOCIATES, LLC, | ) |
| | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

Plaintiffs Tim Davis, John Alukonis, and Monalisa Hart sued Defendant Portfolio Recovery Associates, LLC ("PRA") for allegedly violating the Fair Debt Collection Practices Act ("FDCPA"). After their cases were consolidated and at the close of discovery, both sides moved for summary judgment. Presently before the Court are PRA's Motion for Summary Judgment and Brief in Support, (Docket Nos. 30, 31), PRA's Concise Statement of Material Facts, (Docket No. 34), Plaintiffs' Motion for Summary Judgment and Brief in Support, (Docket Nos. 32, 33), and PRA's Brief in Opposition to Plaintiffs' Motion for Summary Judgment, (Docket No. 35). After careful consideration of the parties' positions and for the following reasons, PRA's Motion [30] is granted and Plaintiffs' Motion [32] is denied, and the Court will enter judgment in favor of PRA.

**II. FACTUAL BACKGROUND**

The Court consolidated the three lawsuits filed against PRA because the material facts and issues to be decided are nearly identical. (Docket No. 14). As such, the Court will primarily draw from the undisputed evidence in Davis' case and will discuss the evidence in Alukonis' and Hart's cases only where it differs from Davis' case. The evidence consists of exhibits attached to the

1

complaints, excerpts of deposition testimony by each individual plaintiff and a representative of PRA, and documentary evidence submitted by PRA in its motion.

On April 19, 2019, a complaint was filed on behalf of PRA against Davis in Pennsylvania state court. (Docket No. 1-1 at 15). On August 7, 2019, the law firm of Fenters Ward sent a letter to PRA on behalf of Davis. (*Id.* at 17). An attorney from Fenters Ward entered an appearance in the state court action on behalf of Davis the next day. (*Id.* at 14-15). The body of the letter is reproduced in full below:

> To Whom It May Concern:
>
> Please accept this letter as confirmation of my representation of **Tim E. Davis** with a current address of **1595 Axmann Rd., Bellefonte, PA 16823.** My representation of the above-mentioned client includes any related debt(s) and/or credit account(s) your company claims to have, sold, purchased and/or assigned from yourself, another creditor, debt buyer or other entity as of the date of this letter (the "Debts"). Please cease and desist any further communications with my client as it relates to the collection of Debts.
>
> According to my client, your company has been reporting the above-referenced accounts to collection and/or credit agencies. My client denies owing **Portfolio Recovery Associates, LLC** any amount of money and demands proof of liability, accounting and ownership of these alleged accounts. The proof shall include any agreements and any amendments thereto, any other written or signed documents agreed to by my client, as well as, a complete history of billing statements reflecting how you calculated the current amount claimed, owed, reported to the collection and/or credit agencies and complete copies of any assignment documentation evidencing your ownership rights to the specific accounts.
>
> Pursuant to the Consumer Financial Protection Act (**CFPA**) 12 U.S.C. 5533(a) and the Fair Debt Collection Practices Act (**FDCPA**) 15 U.S.C. § 1692 et seq. we request that you provide additional documents related to the Debt you claim is owed by our client:
>
> 1. the original account-level documentation reflecting all purchases, payments, or other actual uses of the account;
>
> 2. a document signed by our client evidencing the opening of the account forming the basis for the debt;
>
> 3. the name of the creditor at the time of charge-off, including the name under which the creditor did business with our client;

> 4. the last four digits of the account number associated with the debt at the time our client's last monthly account statement, or, if not available, at the time of charge-off; the charge-off balance;
>
> 5. **Portfolio Recovery Associates, LLC** method of calculating any amount claimed in excess of the charge-off balance;
>
> 6. a copy of the statement where **Portfolio Recovery Associates, LLC** offered to provide our client (within 30 days of a written request) with copies of a document signed by our client evidencing the opening of the account forming the basis for the debt; and the original account-level documentation reflecting a purchase, payment, or other actual use of the account.
>
> Please be advised that at all times relative hereto, we are disputing this debt under the FDCPA, FCRA, FCEUA and/or the UTPCPL. **AS SUCH YOU MUST 1) NOTIFY ANY CRAs YOU HAVE FURNISHED INFORMATION TO THAT THIS TRADE LINE IS DISPUTED; 2) YOU MUST CEASE ALL COLLECTION ATTEMPTS AND DELETE THE TRADE LINE UPON FINAL DISMISSAL OF THE DEBT COLLECTION LAWSUIT IF JUDGMENT IS RENDERED IN FAVOR OF DEFENDANT.** You may direct the requested proof to my office at the address listed above. **YOU HAVE THIRTY (30) DAYS TO PROVIDE THE REQUESTED PROOFS.** All future correspondence or contact shall be directed to my office until my office provides written confirmation of termination of legal representation, if such termination should ever occur. **YOU MUST PROVIDE THIS NOTICE TO ANY ASSIGNEE, TRANSFEREE OR SUBSEQUENT OWNER OF THIS OR ANY DEBT. IF YOU FAIL IN ANY OF THESE REGARDS, YOU WILL BE SUBJECT TO LIABILITY UNDER FEDERAL AND STATE CONSUMER PROTECTION LAWS.**

(*Id.*).

In particular, the letter from Fenters Ward stated that it represented Davis, directed all future correspondence from PRA to go to Fenters Ward, and denied that Davis was liable to PRA. (*Id.*). The letter also asked PRA to "provide additional documents related to the Debt you claim is owed by our client" and provided a numerical list of items. (*Id.*). Fenters Ward relied on federal law, in particular 12 U.S.C. § 5533(a) and 15 U.S.C. § 1692, to make its demand for information from PRA. (*Id.*). After Fenters Ward had sent its letter to PRA but before PRA had responded, the judge in the state court action entered judgment in favor of Davis. (Docket No. 1-1 at 15, 24).

Despite the state court's judgment, PRA responded to Fenters Ward in a letter dated August 29, 2019. (Docket No. 30-3). The letter was addressed to Fenters Ward at its mailing address and referenced the account number associated with Davis' alleged debt. (*Id.*). The text of the letter is re-produced below:

3

> Here is a summary of additional information listed in the electronic file for this account:
> Account holder's Name Provided By Seller: TIM E DAVIS
> Account holder's Last 4 Digits of SSN: 3460
> Date Account Opened Provided by Seller: 05/30/2012
>
> DEPT 922
> PO BOX 4115
> CONCORD CA 94524
>
> **Portfolio Recovery Associates, LLC**
>
> CHANGE SERVICE REQUESTED
>
> 08/29/2019
> Account Number: ████████8018
> Reference Number: ████1473
> D4A
>
> FENTERS WARD
> 201 S HIGHLAND AVE
> STE 201
> PITTSBURGH PA 15206
>
> This letter is in reference to your client TIM E DAVIS.
> Dear TIM E DAVIS,
>
> The following information is being provided in response to your recent communication concerning the account referenced above. Account Number ████████8018 and its proceeds were sold, assigned and transferred by the Seller to PRA, LLC on 05/22/2018. At the time of the sale, the Seller provided an electronic file of its business records containing information concerning the account; a summary of which can be found below. Please contact us if you would like to receive a payment history of payments that have posted to this account since our company purchased this account.
>
> Sincerely, Disputes Department
> Telephone: 1-800-772-1413
>
> **Account Details**
> Account Number: ████████8018
> Seller: CAPITAL ONE BANK (USA) N.A.
> Original Creditor: CAPITAL ONE BANK (USA) N.A.
> Current Creditor: PORTFOLIO RECOVERY ASSOCIATES, LLC
> Balance: $2,449.66
>
> **Contact Us**
> Online: www.portfoliorecovery.com
> By Phone: Call 1-800-772-1413
> By Mail:
> PORTFOLIO RECOVERY ASSOCIATES, LLC
> 120 Corporate Boulevard, Norfolk VA 23502
>
> **This communication is from a debt collector but is not an attempt to collect a debt.**
> Notice: See Reverse Side for Important Information

(*Id.*).

Among other things, the letter provided the account holder's name (i.e., Davis), the last four digits of his social security number, and the date the account was opened by the seller. (*Id.*). The letter then provided the name of the seller (Capital One Bank (USA) N.A.), the current creditor (PRA), and the balance owed. (*Id.*). Below this information was a "Contact Us" table that included

a website address, 1-800 number, and mailing address of PRA. (*Id.*). Lastly, in a footer at the bottom, the letter stated, "This communication is from a debt collector but is not an attempt to collect a debt. Notice: See Reverse Side for Important Information."[1] (*Id.*). During his deposition, Davis stated that PRA's letter went to his counsel, not him. (Docket No. 30-2 at 10).

Alukonis and Hart also faced Pennsylvania state court lawsuits filed on behalf of PRA. (Civil Action No. 21-193, Docket No. 1-2 at 18; Civil Action No. 21-199, Docket No. 1-1 at 16). They also retained Fenters Ward who sent the same letter to PRA that it had sent on behalf of Davis. (Civil Action No. 21-193, Docket No. 1-2 at 22-23; Civil Action No. 21-199, Docket No. 1-1 at 19-20). PRA responded to Fenters Ward with materially identical letters to the one it had sent in Davis' case. (Docket Nos. 30-4; 30-5 at 5; 30-6; 30-7 at 5). In Alukonis' case, PRA's letter arrived before a state court judge entered judgment in his favor. (Civil Action No. 21-199, Docket No. 1-1 at 17; Docket No. 30-4). In Hart's case, a state court judge entered judgment in PRA's favor, and PRA's response to Fenters Ward arrived shortly thereafter. (Civil Action No. 21-193, Docket No. 1-2 at 20, 29; Docket No. 30-6).

**III. PROCEDURAL HISTORY**

Following the end of the lawsuits brought against them, Plaintiffs sued PRA in individual state court actions for violating 15 U.S.C. § 1692e(10), a provision of the FDCPA. (Civil Action No. 21-193, Docket No. 1; Civil Action No. 21-199, Docket No. 1; Docket No. 1). These cases were removed and ultimately consolidated under Civil Action Number 21-166. (Docket No. 14). All three plaintiffs made the same argument: the assertion in the footer of PRA's letters was a "false representation or deceptive means" used to collect a debt in violation of 15 U.S.C.

---

[1] The parties did not include a "reverse side" of the letter in the record and do not discuss its contents in their briefs.

§ 1692e(10). Plaintiffs contend that although PRA stated in the footer that that the letter was not an attempt to collect a debt, in reality, the letter *was* an attempt to collect a debt, thus making the assertion false.

After the parties completed discovery, both sides moved for summary judgment. (Docket Nos. 30, 32). Both sides also filed briefs in support of their respective motions. (Docket Nos. 31, 33). PRA submitted a concise statement of materials facts, (Docket No. 34), but Plaintiffs failed to submit same. Likewise, PRA responded to Plaintiffs' motion, (Docket No. 35), but Plaintiffs did not respond to PRA's motion. No party submitted reply briefs. Accordingly, with briefing complete, the Court considers the motions for summary judgment fully briefed and ripe for disposition.

**IV. LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019) (citations omitted). Further, "[a] dispute is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Clews v. County of Schuylkill*, 12 F.4th 353, 358 (3d Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

A party seeking summary judgment "must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof." *Conboy v. U.S. Small Bus. Admin.*, 992 F.3d 153, 160 (3d Cir. 2021) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Once the moving party meets

its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings." *Conboy*, 992 F.3d at 160; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In this regard, the non-movant must come forward with more than "some metaphysical doubt as to the material facts." *Conboy*, 992 F.3d at 160; *see also Matsushita*, 475 U.S. at 586-87.

In order to determine whether a genuine issue of material fact exists, the Court's analysis begins by a review of the parties' filings to determine the realm of potentially disputed facts. As such, all summary judgment filings must comply with Federal Rule of Civil Procedure 56, as well as this Court's companion Local Rule 56. Both rules "allow facts to be deemed admitted where they are not properly opposed." *See Kelly v. DeJoy*, No. 19-204, 2021 WL 914207, at *4 (W.D. Pa. Mar. 10, 2021) (Hardy, J.); FED. R. CIV. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . consider the fact undisputed for purposes of the motion."); LCvR 56(E) ("[M]aterial facts set forth in the moving party's Concise Statement of Material Facts . . . which are claimed to be undisputed, will for the purposes of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party.").

### V. DISCUSSION

Before reaching the merits of the summary judgment motions, the Court will first address what set of undisputed material facts it will rely on to dispose of both motions and will define which of Plaintiffs' theories of liability are properly before it.

**A. Preliminary Issues**

1.  **Facts Deemed Admitted**

The Court observes that PRA submitted a concise statement of material facts that it supports with citations to the record. (Docket No. 34). Plaintiffs failed to respond with an opposing statement of facts or submit their own statement of fact for their summary judgment motion such that the facts are deemed admitted. FED. R. CIV. P. 56(e); LCvR 56(E). Nonetheless, they appear to agree with the facts in PRA's statement of facts in their brief supporting their motion for summary judgment. (*See* Docket No. 33). Additionally, the parties' motions address the same issues, making it appropriate to consolidate discussion of the two motions. Given the filings before it and the overlapping issues in the parties' motions, the Court will rely on PRA's unopposed concise statement of material fact for both pending motions where the factual assertions are supported by record citations. FED. R. CIV. P. 56(e); LCvR 56(E).

2.  **Plaintiffs' Theory of Liability**

In their complaints, Plaintiffs alleged that PRA violated the FDCPA with language in the footer of its letters. In the footer, PRA stated that "[t]his communication is from a debt collector but is not an attempt to collect a debt." (Docket No. 30-3). According to Plaintiffs, PRA's statement disclaiming an attempt to collect a debt was a "false representation and deceptive means" because the letter was, indeed, an attempt to collect a debt. (Docket Nos. 1-1 at 6,8; Docket No. 30-3).

At summary judgment and with discovery complete, however, Plaintiffs have changed course from their original pleadings and apparently abandoned the footer theory. For Davis and Hart, Plaintiffs now argue that PRA violated 15 U.S.C. § 1692e due to the timing of PRA's letter. (Docket No. 33 at 11). PRA's letters reached Fenters Ward after the state court judge entered judgments in favor of Davis and against Hart. (Civil Action No. 21-193, Docket No. 1-2 at 29; Docket No. 1-1 at 15, 24). According to Plaintiffs, the letters would "clearly confuse" Davis and

8

Hart by making them think they still owed the alleged debts even they that had just prevailed in court. (Docket No. 33 at 11). Of course, in Hart's case, she had *not* prevailed in court, a fact Plaintiffs overlook entirely. (Civil Action No. 21-193, Docket No. 1-2 at 20, 29; Docket No. 30-6). In Alukonis' case, where PRA's letter reached Fenters Ward before the state court judge entered judgment in Alukonis' favor, Plaintiffs argue that the letter was "clearly an attempt to deceive Mr. Alukonis by having him believe that [PRA] had evidence to support its allegation that Mr. Alukonis owed a debt." (Docket No. 33 at 11; *see also* Civil Action No. 21-199, Docket No. 1-1 at 17; Docket No. 30-4). In other words, Plaintiffs accuse PRA of bluffing and filing a meritless state court action against Alukonis.

Plaintiffs' two theories of § 1692e(10) liability at summary judgment are entirely different than the theory they pled in their complaints. In those pleadings, Plaintiffs focus on the supposedly deceptive nature of the footer. However, their summary judgment brief focuses on the timing of when PRA sent the letters or that PRA was supposedly bluffing when it claimed that it had evidence of Alukonis' debt. It is well established that "[a] plaintiff may not amend her complaint through argument in a brief opposing summary judgment." *Nykiel v. Borough of Sharpsburg*, 778 F. Supp. 2d 573, 587 (W.D. Pa. 2011) (Lancaster, J.); *see Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 676 F.3d 318, 326 (3d Cir. 2012). Rather, "the proper procedure for [a] plaintiff to assert a new claim is to amend the complaint in accordance" with Federal Rule of Civil Procedure 15, something Plaintiffs have not done here. *Nykiel*, 778 F. Supp. 2d at 587. Accordingly, the Court finds that Plaintiffs' two new theories put forward in Plaintiffs' summary judgment brief are procedurally barred and will grant summary judgment to PRA on this basis alone. *See Carney v. Goldman*, Civ. No. 15-260, 2018 WL 24417667, at *6 (D.N.J. May 30, 2018) (granting summary judgment to a debt collector on certain FDCPA theories because the plaintiff never articulated

these theories in its pleadings). With that said, the Court will continue its analysis and address the merits of all of Plaintiffs' FDCPA theories of liability in the next section.

### B. Merits of Plaintiffs' FDCPA Claims

Even if Plaintiffs' claims were not procedurally barred, they would also fail on the merits. To that end, after careful review of the record and for the following reasons, the Court finds that (1) PRA's letter was not a "representation or means" used "in connection with the collection of" a debt, and (2) PRA's letter was not "false or deceptive." Therefore, Plaintiffs' motion for summary judgment will be denied and PRA's motion granted, and the Court will enter judgment in PRA's favor.

Section 1692e states that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." As relevant to Plaintiffs' complaints, it specifically prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt." § 1692e(10). The FDCPA defines a "consumer" as "any natural person obligated or allegedly obligated to pay any debt." § 1692a(3). In turn, the term "debt" means "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." § 1692a(5). Lastly, "debt collector" means "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." § 1692a(6).

To succeed in an FDCPA lawsuit given the statutory text, "a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice

involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014).

### 1. Whether PRA used a "representation or means" to collect a debt

The parties focus much of their attention on the third element that Plaintiffs must establish: whether PRA's letters were a "representation or means" sent "in connection with the collection of" a debt. 15 U.S.C. § 1692e; *see Douglass*, 765 F.3d at 303. If a letter does not qualify as "debt collection activity," it cannot violate the FDCPA. *See McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 245 (3d Cir. 2014). The Third Circuit has explained that "activity undertaken for the general purpose of inducing payment" satisfies § 1692e's debt collection condition. *Id.* A letter "need not contain an explicit demand for payment to constitute debt collection activity." *Id.* at 245-46. Letters "that include discussions of the status of payment, offers of alternatives to default, and requests for financial information may be part of a dialogue to facilitate satisfaction of the debt and hence can constitute debt collection activity." *Id.* Also, a business "that identifies itself as a debt collector, lays out the amount of the debt, and explains how to obtain current payoff quotes has engaged in a communication related to collecting a debt." *Id.* at 246. Lastly, letters sent to a debtor during litigation can qualify as debt collection activity. *Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 267 (3d Cir. 2013).

As the Court sees it, while PRA's letter "identifies" PRA as a debt collector and "lays out the amount of the debt," nothing else about the letters matches the factors put forward by the Third Circuit. *See McLaughlin*, 756 F.3d at 245; (Docket Nos. 30-3, 30-4, 30-6). The letters do not demand payment, offer alternatives to default, or request financial information. *See id.* In fact, the letters make no request of any kind from the debtors. (Docket Nos. 30-3, 30-4, 30-6). The letters

contain contact information, but do not offer any means of making payment on the alleged debt and expressly disclaim that the letter is an "attempt to collect a debt." *Id.*

Instead of serving as a means of "inducing payment," the Court finds that the letters are merely a brief response to Fenters Ward's request for information regarding the disputed debts. The letters provide the account number, name of the selling creditor, balance allegedly due, date the credit account opened, date PRA obtained the account, and the last four digits of the debtor's social security number. (Docket Nos. 30-3, 30-4, 30-6). The letter ends by saying "[p]lease contact us if you would like to receive a payment history of payments that have posted to this account since our company purchased this account." (Docket Nos. 30-3, 30-4, 30-6). All of this information came as a response to Fenters Ward's request and does not constitute an attempt to "induc[e] payment." *See McLaughlin*, 756 F.3d at 245. Rather, the letter is "merely a ministerial response to a debtor inquiry, rather than part of a strategy to make payment more likely." *Simon*, 732 at 265 (internal quotation marks omitted) (quoting *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011)).

In *Grden*, a case cited favorably by the Third Circuit, the Sixth Circuit held that a debt collector's statement made to a debtor over the phone when the debtor had called asking for information about his debt was not debt collection activity. *See* 643 F.3d at 171, 173. The "decisive point," according to the Sixth Circuit, was the fact that the debt collector communicated with the debtor "only after [the debtor] called." *Id.* at 173. In other words, given that the debt collector was responding to an inquiry rather than initiating a conversation about the debt, the Sixth Circuit did not view the communication as an attempt by the debt collector to induce payment. *See id.* Similarly, the Seventh Circuit held that informing a debtor of "the current status" of an account is

not an attempt to collect a debt. *Bailey v. Sec. Nat'l Serv. Corp.*, 154 F.3d 384, 386, 388-89 (7th Cir. 1998).

The Court views the present case as similar to *Grden*. Like in *Grden*, the PRA sent its letter "only after" Fenters Ward sent its own letter asking for information about the debts. *Grden*, 643 F.3d at 173. The context in which PRA sent its letters shows it was responding to Fenters Ward, not attempting to induce payment. As such, no reasonable jury could find that PRA's letters were sent "in connection with the collection of" Plaintiffs' debts, and the Court will grant summary judgment to PRA for this reason. 15 U.S.C. § 1692e; *see Block v. Seneca Mortgage Serv.*, 221 F. Supp. 3d 559, 585-86 (D.N.J. 2016) (holding that a debt collector's response to a debtor's phone call inquiring about a debt cannot, as a matter of law, qualify as a statement made in connection with the collection of a debt).

### 2. Whether PRA's letter was a "false representation or deceptive means"

The Court now turns to whether PRA's letters were "false" or "deceptive" in violation of § 1692e(10). *See Douglass*, 765 F.3d at 303. The Court will first address the applicable legal standard and then discuss the merits of Plaintiffs' claim.

#### a. The Competent Attorney Standard

In the typical FDCPA case, courts assess whether a debt collector's behavior could deceive or mislead a hypothetical "least sophisticated debtor" and put aside the question of whether the plaintiff herself was deceived or misled. *Jensen v. Pressler & Pressler*, 791 F.3d 413, 418-19 (3d Cir. 2015). When a debt collector interacts with a debtor's attorney instead of the debtor, however, many courts have endorsed assessing the debt collector's behavior from the standard of a "competent attorney." *Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 695 (8th Cir. 2017). The

Third Circuit has not yet had the opportunity to analyze the competent attorney standard, but it has been applied by lower courts throughout the Third Circuit's jurisdiction. *See e.g.*, *Elnaggar v. Allard*, 19-cv-3743, 2021 WL 1224062, at *3 (E.D. Pa. Apr. 1, 2021); *Fratz v. Goldman & Warshaw, P.C.*, 11-cv-2577, 2012 WL 4931469, at *3 n.5 (E.D. Pa. Oct. 16, 2012) (collecting cases using the competent attorney standard in the Third Circuit).

The Court is persuaded by the reasoning in the various judicial opinions to apply the competent attorney standard here. As Judge Posner explained, attorneys possess legal training that layman-debtors do not enjoy, giving attorneys a greater level of knowledge and sophistication regarding what steps a debt collector can lawfully pursue to collect a debt. *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 774-75 (7th Cir. 2007) (observing that an attorney "would not have to be an expert on the Fair Debt Collection Practices Act to be able to look it up and discover what" rights a debtor enjoys against unfair and abusive collection practices); *Dikeman v. Nat'l Educs., Inc.*, 81 F.3d 949, 953 (10th Cir. 1996) ("The legal implications of communicating with a debt collector would be especially within the professional competence of a lawyer hired to represent a client's interests."). Accordingly, the Court will apply the competent attorney standard when assessing whether PRA violated § 1692e(10) because PRA sent its letter to counsel rather than to the Plaintiffs themselves. (Docket Nos. 30-3, 30-4, 30-6).

### b. Application of the Competent Attorney Standard

After studied consideration, the Court holds that PRA's letter would not deceive or mislead a competent attorney under all of the theories put forward by Plaintiffs, including the one pled in their complaints or those they have attempted to bring at summary judgment. The Third Circuit has emphasized that "[a] debtor simply cannot be confused, deceived, or misled by an incorrect statement unless it is material." *Jensen*, 791 F.3d at 421. Additionally, "a statement in a

14

communication is material if it is capable of influencing the decision" of the recipient, here Fenters Ward which received the letter. *Id.*

In the Court's view, PRA's letter would not influence the decision-making process of a competent attorney receiving a letter in response to her own request for information that contained a footer stating "[t]his communication is from a debt collector but is not an attempt to collect a debt." (Docket No. 30-3). A competent attorney would interpret the letter merely as a response to her request during the course of litigation, not as a demand for payment or anything else. *See Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 33 (3d Cir. 2011) (applying least sophisticated consumer standard and rejecting argument that a letter implied that a debt collector would initiate litigation when the letter made no mention of litigation); *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 471 (3d Cir. 2021) (concluding that the plaintiff "reads into the [letter] an implication that it does not create," and thus the letter did not violate § 1692e(10)).

Likewise, a competent attorney would not become confused or alter how she represents a debtor if she received PRA's letter after a court had entered judgment against the debt collector in litigation, as happened to Davis and as Plaintiffs mistakenly believe happened to Hart. Any competent attorney would understand that the state court's entry of judgment meant that the debtor did not have to pay the debt, regardless of what a late-arriving informational letter from the debt collector might say. *Elnaggar*, 2021 WL 1224062, at *4 (explaining that "[i]t is not reasonable to infer that Plaintiff or his attorney were misled or deceived about the character, amount, or legal status of the debt" when "the parties had been actively engaged in litigation related to the debt in question"); *Moyer*, 991 F.3d at 471. Reinforcing this finding is the fact that Plaintiffs' counsel, Fenters Ward, demanded the information while citing PRA's purported federal statutory obligation under 12 U.S.C. § 5533 requiring debt collectors to provide such information upon request from a

debtor. (Docket No. 1-1 at 14-15). All told, Plaintiffs' counsel would not become confused by an informational letter that it demanded and which PRA was allegedly obligated to provide.

For Alukonis' situation, where PRA's letter arrived before the state court's entry of judgment in his favor, no one (let alone a competent attorney) would be confused or deceived into believing that PRA "had evidence to support its allegations" of an outstanding debt when it did not. (Docket No. 33 at 11). After close inspection of the record, the Court finds that the record reveals nothing about why the state court entered judgment in Alukonis' favor or whether PRA possessed a legally enforceable debt. Without evidence of the debt's validity (or lack thereof), Plaintiffs have not shown that the letter was a "false representation" or "deceptive means" because Plaintiffs have not shown that the debt was invalid when Fenters Ward received the letter. *Cf. Blair v. Fed. Pac. Credit Co., LLC*, No. 20-4100, 2021 WL 4398665, at *6 (D.N.J. Sept. 27, 2021) ("That a debt is not legally enforceable does not render it nonexistent."). If the debt was still valid when Fenters Ward received the letter, then the letter could not be false or deceptive.

In sum, given that PRA's letters were not false or deceptive under any theory put forward by Plaintiffs, the Court grants summary judgment in favor of PRA.[2]

**VI. CONCLUSION**[3]

---

[2] Given the analysis above, the Court will not address the parties' dispute regarding whether Defendant is a debt collector and whether it was attempting to collect a debt. (Docket Nos. 31 at 9; 35 at 2-4).

[3] Although they do not pursue it in their motion or brief, Plaintiffs alleged in their complaints that PRA's letter also violated 15 U.S.C. § 1692d's prohibition on "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." While Plaintiffs have apparently abandoned this claim, for the sake of completeness, the Court finds that PRA's boilerplate letter responding to Fenters Ward's request for information was not harassing, oppressive, or abusive. The letter contains no rude language or implied threats and is a far cry from the type of behavior prohibited in § 1692d such as threatening violence or using profane language.

Based on the foregoing, Plaintiffs' Motion for Summary Judge [32] is hereby DENIED and PRA's Motion for Summary Judgment [30] is hereby GRANTED. An appropriate order follows.

<i>s/Nora Barry Fischer</i><br>
Nora Barry Fischer<br>
Senior U.S. District Judge

Date:   January 14, 2022

cc/ecf:  All counsel of record.